Well, good morning to everyone. We'll start with the first case on calendar, Brunstorff v. United States. May it please the court, my name is Jeff Kestenband and I represent the appellant, Kewani Brunstorff. With the court's permission, I request two minutes for rebuttal. Done. Thank you, Your Honor. In order for this court to reverse the district court, it has to conclude that only one out of the three of the petitioner's convictions is not a violent felony. And with that in mind, I'm going to discuss primarily two of the convictions, the attempted assault in the second degree conviction and the assault in the second degree conviction. Starting with the attempted assault, New York law is clear that an attempt... You are not speaking loudly enough. Okay, I hope this is better, Your Honor. Louder or speak more clearly. New York law is clear that an attempted assault requires only that the conduct tend to affect the commission of the crime. And the case law, particularly three cases cited in our brief, establish that far less than violent conduct can constitute an attempt to commit a violent offense, including attempted murder. Two of the cases, the Sabo case and Narazzi case, were both attempted murder convictions based on far less than violent conduct. In one of those cases, the defendant hired a middleman with the hope that the middleman would hire a hitman to commit a murder. The defendant provided information to the middleman about the victim. The defendant provided $10,000 as a down payment to the middleman. And the middleman went to the police and the plot was foiled as a result. And the defendant was convicted of attempted murder. No question that murder would be considered a violent felony. But the defendant was convicted there based on far less than violent conduct. The Narazzi case similarly involved a defendant who obtained a gun, ammunition, and drove to the victim's home with the hope to kill the victim. It was unsuccessful and the defendant was convicted of attempted murder. And in the Denson case, the defendant there attempted to lure the victim into a sexual situation with a young victim. The defendant was convicted of kidnapping, which is also typically thought of, I'm sorry, attempted kidnapping, which is typically thought of, the kidnapping is typically thought of as a violent felony. But there, none of the defendant's conduct actually involved any violence. And yet, all of those convictions were affirmed by the New York State Courts. So what that establishes is that under New York law, conduct that tends to affect the commission of a violent crime is not necessarily, or categorically as the term we use, violent in itself. As a result, applying the categorical approach to the petitioner's conduct here, he was convicted of attempt to commit assault in the second degree, which requires that the defendant attempt to cause physical injury, and obviously failing to cause physical injury. That law by itself establishes that his assault conviction is not a violent felony. There are three other points I think that are worth highlighting with respect to this argument. One is that 2010 Johnson teaches us that when we talk about the ACCA, we focus on violent crimes, violent conduct. That's what the court said in 2010 Johnson. It also discussed that principle in 2015 Johnson, that the conduct has to be violent in nature, and attempts under New York law are not categorically violent. Second, 2010 Johnson also teaches us that ACCA predicates are defined by state law. When we look at a defendant's conviction under the ACCA, we look at how the particular state defined the predicate conviction. For the reasons I've discussed, it's clear that New York does not always define an attempt to commit a violent crime as violent in itself. What do you say about the Walker case, which seems to be in disagreement with the argument you're just making? What I say about the Walker case, Your Honor, is that the defendant there, from my reading of Walker, never raised this argument under the tend to affect language of the attempt statute. It appears that the defendant in Walker focused on some of the other arguments that have been made, focusing on force, that if you attempt to commit a forceful act, that's not necessarily forceful. But there's nothing in Walker that specifically addresses the New York cases that we've cited, or the tends to affect language in the attempt statute. It is an attempted assault case, and it says that attempted assault is categorically a crime of violence. But for reasons different than what I'm arguing. In reading Walker, it talks about the defendant focused on the force language, that certain conduct that we may think of as being forceful is not forceful. But there's nothing in Walker that talks about this particular aspect of the attempt statute. And for that reason, I would argue that Walker's distinguishable. The statute itself talks in terms of the use of physical force and the attempted use of physical force. Correct. But if- Why don't we have the attempted use of physical force here? Well, we don't look at the specific facts of the case, if that's the court's question. We look at the elements of the statute. In New York, we know, for example, if you go to the store to buy a knife, that could constitute an attempt to commit assault. You don't have to thrust the knife at the victim in order for it to be an attempt. You have to engage in conduct that merely tends to affect the commission of the ultimate crime. I'm skeptical that buying a knife could result in your being convicted of attempted assault in the courts of New York. Well, certainly- They're not flawless, but it seems to me that that's going pretty far. And that may not be the case. I'm using an extreme example, but certainly- I think the chefs of New York are grateful that you see that was not the case. I do think, however, if you buy the knife and you drive to the victim's home, under the Narazzi case, there's certainly an argument there to be made that you've committed an attempted assault. Because in that case, the defendant bought the gun and the ammunition and drove to the victim's home, and he was convicted of attempted murder. So he didn't have to shoot the gun at the victim. Your argument is that while there may be some attempted crimes, attempted crimes that are categorically crimes of violence or force, that assault is not such in New York that an attempt at it is categorically such. Do I have the argument? That's correct, Your Honor. I don't think I have to go this far in this case, but I think conceivably I could make the argument that an attempt to commit murder is not categorically violent for the reasons that the New York courts have identified. But certainly here, where we're just dealing with an assault as opposed to more extreme conduct, that only helps my argument. I certainly agree with that, Your Honor. The other point I would make is in order to, well, moving on to the assault statute, one quick point is that Villanueva itself, footnote six, establishes that an assault is not categorically violent, because there the court said that Villanueva involved first-degree assault, where the defendant has to intend to commit serious physical injury. And in footnote six, this court said in Villanueva that that was a necessary element of the government's claim, that if we were just talking about physical injury, as in the Kronczowski case, if I'm pronouncing that correctly, then that would not constitute a violent felony. I'll reserve the rest of my time for rebuttal. Thank you. Good morning. Anthony Kaplan for the Appellate United States. May it please the Court. Before we get to the issue of whether these are categorical crimes of violence, the question is the Court's initial mandate was, and Judge Shea determined, that you don't get there, because there's a procedurally defaulted, in that Judge Burns, in sentencing the defendant, found that they were categorical crimes of violence. Granted, she didn't say that as part of the actual sentencing itself, because there was no dispute at that time that they were crimes of violence. But two years later, in a 20 to 55 decision, she clearly indicated that she was relying on the elements clause and not the residual clause, which the Court can consider as part of the entire record. On that basis, There's a circuit split on what has to be shown, but I don't understand why we would want to reach that issue. Either, as you assert, these were all crimes of force, and therefore you win, or they're not, and therefore they win. Well, I don't think you have to reach the issue, because I don't think the record, the split is as to when the record is silent and who the burden is on. And actually, there are a couple of new decisions since I filed a brief. Walker, in the Eighth Circuit, said the defendant would need to show by a preponderance of the evidence. Peppers, in the Third Circuit, appears to go the other way. The Fifth Circuit, in Weiss Maybe I want to rephrase what I just said, because you're right, that if we were to find that one of the predicates was not a crime of force and violence, then we would have to reach this issue. And so, with respect to the circuit split, is it your position that the test should be that the appellant has to show that the district court relied on the residual clause as opposed to may have, or is it your position that even if under a may have test, given what Judge Burns later said, it's reasonably clear that she relied on the force clause, not the residual clause? Yes, Your Honor, I think the latter. In that, I don't think the court needs to resolve that issue as to what the standard is. I would note in Belk, in the footnote, there is an indication But counsel, if we're talking about letting somebody bring habeas, realistically, at the time that Judge Burns decided, there was no way that this person could make a direct appeal because both the residual clause and the specific force clause barred it. That was also true when subsequently another judge said that it was under the force clause. So that, as a practical matter, if we take your position, we are barring somebody who could not possibly have raised these issues at all. At the time, because he had no law, placing it on habeas later, and that seems very strange, given that the Supreme Court has made its decision retroactive. It is a practical matter that negates the retroactivity. So it would seem to me that on the circuit split, we would have to come out with a may have, not likely did, and that also affects how much weight we give to the later comment of a different judge. Your Honor, I would say that you don't get to that issue unless under the court's mandate and the direction to Judge Shade below, you don't get to 2010 unless you succeed on 2015. And Judge Burns, I think, was quite clear in her decision, a ruling on the 2255, that she was relying, when she sentenced Mr. Brunsdorf, she was relying on the force elements clause and not the residual clause. That's what she cited, too. So I would say, Your Honor, that you don't have to resolve the circuit split, and you don't have to get to the issue of whether they are crimes of violence or not. I think that as a matter of procedure, Mr. Brunsdorf doesn't succeed. Let me just respond also briefly to the issue of the attempt. As Judge Jacobs said, I think it's within the statute. An attempt to commit a crime of violence is actually in the ARMCOR criminal statute. Also, this court recently... To what extent do we look to state law in looking at the particulars of that? Well, I think, Your Honor, that's been actually resolved in Pereira-Gomez. Oh, like last week or something? Well, yes, Your Honor. I think it was last week. And that's Judge Cabranes indicated that the state's highest court requires that action be taken by the accused be so near to its accomplishment that in all reasonable probability the crime itself would have been committed but for timely interference. So in terms of interpreting New York state law on attempt, I think that that matter has been resolved by Pereira-Gomez. Thank you. Unless the Court has any further questions, I'll rest on my brief. We'll hear rebuttal. Thank you. I'll start by addressing the Pereira-Gomez. Judge Cabranes in that decision used very general language, citing essentially the principle that the conduct has to come dangerously close to the commission of the crime. But there was no specific discussion in Pereira-Gomez about any facts from any cases. We have talked about specific cases with specific facts that establish that attempts in New York to commit violent crimes often, or at least in some cases, occurs with far less than violent action. And so the language in Pereira-Gomez, while it does derive from New York cases, is general in nature and not specific to any particular cases. With respect to the procedural default argument, what's important to remember is that in the underlying criminal case, the indictment was silent as to whether the force or residual clause applied. The plea agreement was silent. At the plea hearing, neither the government nor the court said which clause applied in their view. The sentencing memos were silent. And at the sentencing hearing, most importantly, neither the government nor Judge Burns said that she was sentencing Mr. Brunsdorf under the force clause. And, in fact, there was no need for her to do so because the residual clause was the most clear-cut and straightforward way to impose the sentence in 2012 because 2010 Johnson had complicated the force clause analysis considerably. So what the government hangs its hat on is one brief statement in the first 2255, so a separate proceeding, albeit related to the underlying criminal case, where approximately two years later Judge Burns said that she relied on the force clause. Despite any— Isn't she in the best position to know what she relied on? Same judge. Well, absolutely. But, again, we're talking two years later, and as a matter of law, the force clause didn't apply based on 2010 Johnson. At a minimum, it would have involved significant argument as to whether the force clause applied. So it was just much easier at that time to rely on the residual clause because, as Judge Calabresi noted in his question, there was really no remedy in 2012 because the residual clause was constitutional at that time. I see my time is almost up. I just wanted to highlight again footnote 6 in Villanueva, which establishes that serious physical injury is necessary to constitute a violent felony in terms of the harm that's caused. And physical injury, which is at issue in the assault statute here, the implication from Villanueva is that that is not sufficient. Thank you. Thank you both. We'll reserve decision.